UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANIEL LOPEZ DEJESUS, | CASE NO. 25-cv-01427-JHC-TLF |
| Petitioner, | ORDER |
| v. | |
| DREW BOSTOCK, Seattle Field Office Director, BRUCE SCOTT, Warden of Northwest Immigration Detention Center, | |
| Respondents. | |

# I

## INTRODUCTION

This matter comes before the Court on Petitioner Daniel Lopez Dejesus's Petition for Writ of Habeas Corpus. Dkt. # 1. Lopez[1] says his ongoing detention at the Northwest ICE Processing Center (NWIPC) violates the Due Process Clause of the Fifth Amendment. *Id.* at 1. Respondents counter that he has been lawfully detained and is subject to mandatory detention. Dkt. # 8. The Court has reviewed the materials filed in support of and in opposition to the petition, the record, and the governing law. Being fully advised, for the reasons below, the Court GRANTS the petition.

---

[1] As Petitioner's motion refers to him as "Mr. Lopez," this Order refers to him by the same name. *See generally* Dkt. # 16.

ORDER - 1

## II

### BACKGROUND

Lopez entered the United States from Mexico without immigration paperwork in 1991. Dkt. # 16-1 at 2. At the time, he was three years old. Dkt. # 16-6 at 4. He has lived in the United States since then. *Id.*

Between 2007 and 2010, Petitioner was convicted of various state-law offenses in Oregon, including failure to appear, sale and possession of methamphetamine, robbery, and forgery. Dkt. # 10-1 at 4–5. The longest term of incarceration that he was sentenced to for these crimes was 90 months. *Id.* In 2020 and 2021, the Governor of Oregon pardoned Lopez and his criminal record was expunged. Dkt. ## 16-4, 16-5.

In March 2020, Lopez was transferred from the Oregon Department of Corrections to Immigration and Customs Enforcement (ICE) custody, and he "was then processed for an administrative removal due to his criminal history and lack of immigration status." Dkt. # 10-1 at 3. Nine months later, the Department of Homeland Security (DHS) commenced removal proceedings when it issued him a Notice to Appear in immigration court. Dkt. # 16-9 at 2. DHS charged him with removal under the Immigration and Nationality Act (INA) §§ 1182(a)(6)(A)(i) (noncitizen present in the United States without being lawfully admitted) and 1182(a)(6)(A)(ii) (noncitizen convicted of a controlled substance offense). Dkt. ## 16-9; 16-10. And in August 2021, an immigration judge ordered Lopez to be removed to Mexico. Dkt. # 9 at 2–3. The next month, Lopez appealed the immigration judge's removal order to the Board of Immigration Appeals (BIA). *Id.* at 3.

Lopez was released from ICE custody in September 2021. *Id.* at 3. The agency's Enforcement and Removal Operations (ERO) mandated that he continue to confirm his presence over the phone and report in-person to ICE officers. Dkt. ## 16-3 at 2; *see* 16-11. Lopez says

that he responded to every required phone call.  Dkt. # 16-3 at 2.  And he shows that between September 2021 and January 2025, he successfully reported in-person 27 times.  Dkt. # 16-11. He also says that he had no contact with law enforcement during this period and he was not charged with any criminal offense.  Dkt. # 16-3 at 2.

On January 30, 2025, the BIA dismissed Lopez's appeal.  Dkt. # 9 at 3.  The next day, ICE detained him again and returned him to immigration detention.  *Id.*  He has been held at both the NWIPC and Anchorage Correctional Complex, and he is currently detained at the NWIPC. Dkt. # 16-3 at 2.  On February 5, 2025, Lopez filed a Petition for Review (PFR) in the Ninth Circuit.  *Id.*  This appeal remains pending.  *Id.*  At the Ninth Circuit, Lopez also moved for—and the court granted—a stay of removal.  Dkt. # 16 at 5.  This stay prevents ICE from removing Lopez until the PFR is decided.  *Id.*  This Court has similarly ordered that Lopez cannot be transferred from this district during the pendency of these proceedings.[2]  Dkt. # 17.

### III

### DISCUSSION

A.    Legal Standard

Federal district courts have the authority to grant a writ of habeas corpus.  28 U.S.C. § 2241(a).  But this relief can be extended only under certain conditions.  *See* 28 U.S.C. § 2241(c). One such condition is if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]"  *Id.*  The habeas petitioner must prove by a preponderance of the evidence that he is entitled to relief.  *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

//

---

[2] But there is an exception in this order: "Respondents would be free to transfer Mr. Lopez if, prior to completion of the current proceedings, the Ninth Circuit should uphold the current removal order in Petitioner's current Petition for Review, issue the mandate and remove the current stay of removal." Dkt. # 17 at 2.

ORDER - 3

B.     Due Process

The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law[.]"  U.S. CONST. amend. V.  And "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (collecting cases).

The traditional test for evaluating due process claims set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context."  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).[3]  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  Determining whether a governmental action violates "the specific dictates of due process generally requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

---

[3] In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* test, but "assume[d] without deciding" that *Mathews* applies in the context of immigration detention.  53 F.4th at 1207.  In applying the *Mathews* test, the court recognized that other circuits have applied the *Mathews* test to immigration detention due process challenges.  *Id.* at 1206.  The Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings."  *Id.*  And the Supreme Court has applied *Mathews* in a due process challenge to an immigration exclusion hearing.  *Id.*; *see Landon v. Plasencia*, 459 U.S. 21 (1982).  The Court likewise applies the *Mathews* test here.  *See also E.A. T.-B. v. Wamsley*, 2025 WL 2402130, at *3 (W.D. Wash. Aug. 19, 2025) (applying the *Mathews* test and collecting cases that employed this test in the context of immigration detention).

Petitioner seeks habeas relief, claiming that his "Constitutional due process rights" are being violated. Dkt. # 1 at 1. He contends that each of the *Mathews* factors weighs in his favor. Dkt. # 16 at 24–26. And he says that because his current detention violates the Due Process Clause of the Fifth Amendment, he is entitled to immediate habeas relief. *Id.* at 27. The Government responds that Lopez's continued detention does not violate his due process rights. Dkt. # 8 at 5. It asserts that he is a "criminal noncitizen," his detention is required for his pending removal proceedings, and he has not shown that his detention is unreasonable or unjustified. *Id.* at 5–6.

1.    Private Interest

The first *Mathews* factor considers "the private interest that will be affected by the official action[.]" *Mathews*, 424 U.S. at 335. Lopez says that this factor weighs in his favor because his private interest—a "robust liberty interest"—was affected when he was re-detained in 2025. Dkt. # 16 at 24–25.

Freedom from detention "is the most elemental" of private interests affected by official action. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). So it is unsurprising "[t]he Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (collecting cases). Consequently, when Lopez was released from ICE custody in 2021, he "took with him a liberty interest which is entitled to the full protections of the due process clause." *Ramirez Tesara v. Wamsley*, 2025 WL 2637663, at *3 (W.D. Wash. Sept. 12, 2025).

That the Government allowed Lopez to remain in the community for more than three years after releasing him only strengthened this interest. *See Bd. of Pardons v. Allen*, 482 U.S. 369, 377–81 (1987) (Governmental action can create a liberty interest protected by the Due Process Clause); *Johnson v. Williford*, 682 F.2d 868, 873 (9th Cir. 1982). During this time, Lopez became engaged to a U.S. citizen, assisted his family, and had no contact with law enforcement. Dkt. # 16-3 at 2. But Lopez has now been undeniably deprived of this interest because he was arrested in Oregon, transferred to the NWIPC, and remains detained today. *See* Dkt. # 9 at 3.

The Government responds that it "may constitutionally detain deportable noncitizens during the limited period necessary for their removal proceedings." Dkt. # 8 at 6 (citation modified) (quoting *Demore v. Kim*, 538 U.S. 510, 523 (2003)). But this is beside the point; nor does Lopez deny this. While the Government can detain noncitizens before removing them, noncitizens are still afforded due process protections before they are detained. *See Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]"). Accordingly, the first *Mathews* factor favors Lopez.

2.     Risk of Erroneous Deprivation of Interest Through Procedures Used

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335.

Lopez contends that his re-detainment without a hearing shows a high risk of an erroneous deprivation of his protected liberty interest. Dkt. # 16 at 25–26. And the Government does not explain its decision to re-detain Lopez in 2025. *See generally* Dkt. ## 8, 9, 10. It

simply responds that there is no "bright-line rule for when a noncitizen . . . *may* suffer a due process violation." Dkt. # 8 at 6. So it is unclear whether the Government used *any* procedure before re-detaining Lopez. This runs contrary to the most fundamental requirements of due process—notice and an opportunity to be heard. *Mathews*, 424 U.S. at 333.

In addition, when he was released in 2021, Lopez necessarily satisfied the Government that he "would not pose a danger to property or persons, and that [he would be] likely to appear for any future proceeding." *See* 8 C.F.R. § 1236.1(c)(8). Then, after being released, he dutifully reported in-person 27 times and regularly confirmed his presence to ICE officers over the phone. Dkt. ## 16-3 at 2; 16-11. The Government's failure to show a change in circumstances between the time when Lopez was released and when he was re-detained also shows that there is a significant risk of an erroneous deprivation of his liberty interest through the procedures used. *See Valdez v. Joyce*, 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025) ("Petitioner's re-detention without any change in circumstances or procedure establishes a high risk of erroneous deprivation of his protected liberty interest."); *see also E.A. T.-B. v. Wamsley*, 2025 WL 2402130, at *5 (W.D. Wash. Aug. 19, 2025) (collecting cases). Thus, the second *Mathews* factor favors Lopez.

3.    Government's Interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

The Government has interests in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690. But "[i]n immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe*, 787 F.

Supp. 3d at 1094).  Thus, "the government's interest in detaining petitioner without a hearing is 'low.'"  *Id.* (quoting *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)); *see E.A. T.-B.*, 2025 WL 2402130, at *5 (same).  Petitioner has also shown his diligence in appearing when required by the Government and the Government determined that he does not pose a danger to the community when it released him in 2021.  *See* Section III.B.2, above.  So this *Mathews* factor also favors Lopez.

In sum, all three *Mathews* factors favor Lopez.  The Government's detention of Lopez with apparently no process at all—much less notice or an opportunity to be heard—violates the due process protections afforded to him by the Constitution.  As a result, he has proven by a preponderance of the evidence that he "is in custody in violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(c).[4]

## IV

### CONCLUSION

For all these reasons, the Court GRANTS the Petition for Writ of Habeas Corpus.  Dkt. # 1.  The Court ORDERS that Petitioner must be released from custody immediately on the same conditions of release previously imposed before his re-arrest in 2025.[5]  He may not be re-detained until after he is provided adequate notice and a hearing is held before an immigration court to determine whether detention is appropriate.

---

[4] Because the Court finds that Lopez's detention violates the Due Process Clause, it does not reach the issue of whether a bond hearing is required under *Martinez v. Clark*, 2019 WL 5968089 (W.D. Wash. May 23, 2019).  Dkt. ## 8 at 6–10; 16 at 8–22; *see Domingo v. Kaiser*, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) (finding that even if a petitioner in immigration detention is afforded a prompt post-detention bond hearing, "he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.").  Although the Government does not raise this issue, the Court adds that any prudential exhaustion requirement imposed by 8 U.S.C. § 1252 (a)(2)(C) is waived because Lopez's continued unlawful detention would cause irreparable injury.  *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017).

[5] *See Y.M.M. v. Wamsley*, 2025 WL 3101782, at *3 (W.D. Wash. Nov. 6, 2025).

The Clerk is DIRECTED to send uncertified copies of this Order to all counsel of record.

Dated this 24th day of November, 2025.

John H. Chun
United States District Judge

ORDER - 9